447 S.E.2d 269

**George BELL, Allison Bell and Jessica Bell, Plaintiffs Below, Appellants,**

**v.**

**VECELLIO & GROGAN, INC., a West Virginia Corporation, Defendant Below, Appellee.**

**No. 21692.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1994.

Decided July 11, 1994.

Jack R. Ormes, Encino, CA, Bruce L. Freeman, Freeman & Chiartas, Charleston, for appellants.

James M. Henderson, II, Abrams, Byron, Henderson & Richmond, Beckley, for appellee.

PER CURIAM:

This is an appeal from a judgment entered in the Circuit Court of Raleigh County, in which the trial court granted the appellee's motion for a directed verdict on the ground that the appellant failed to present evidence sufficient to make a *prima facie* case to establish "deliberate intention" on the part of the appellee, the appellant's employer, as required by *W.Va.Code*, 23–4–2(c)(2)(ii)(A) through (E) [1991][1]. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the judgment of the circuit court is reversed.

## I.

George Bell[2] (hereinafter "appellant") was employed as an ironworker by Vecellio & Grogan, Inc. (hereinafter "appellee"). On May 15, 1990, while working on the construction of a bridge near Flinstone, Maryland,[3] the appellant and co-workers Dennis Lesher, Tom Morrison and Jimmy Singleton were moving nine and one-half ton steel bridge beams[4] to the staging area. Five bridge beams were located in a storage area and placed on their flanges, approximately one foot apart.

The first bridge beam, located in the interior of the other beams, was moved by lifting it, with a boom crane, to a height sufficient to clear the remaining beams so as to move it over the top of the remaining beams.[5] The appellant and Mr. Lesher stabilized the beam with their tag lines, which are ropes attached at each end of the beam, enabling the appellant and Mr. Lesher to stand a safe distance from the beam while directing its movement. Once this first beam cleared the other beams, it was let down two to three feet from the ground, at which time the appellant and Mr. Lesher walked it to the staging area.

The appellant and Mr. Lesher then began to move a second beam out from the interior of the remaining beams. When this second beam was boomed up approximately one foot, it started moving parallel to the remaining beams rather than being lifted up and over the remaining beams as the first beam had been. When it appeared that this second beam was about to hit one of the remaining

---

1. *W.Va.Code*, 23–4–2 was amended in 1994; however, the amendments do not affect this case.

2. The appellant's daughters, Allison and Jessica Bell, were dismissed as plaintiffs by order of June 15, 1992.

3. The appellee was engaged in a highway construction contract with the Maryland Department of Transportation to upgrade U.S. Route 48 to four lanes in the vicinity of Flinstone, Maryland. Part of that work required the appellee to construct eight bridges.

4. The appellant and his co-workers were moving I-beams which were approximately sixty feet long and five feet high, with eighteen-inch flanges.

5. The five beams were apparently delivered to the job site at different times. Therefore, they were not stored in the order in which they were to be moved and set up at the staging area.

beams, the appellant took a few steps in between the beams. It was at that time that the boom on the crane dropped its load, causing the load to fall against one of the remaining beams, which in turn, fell onto the appellant, pinning him to the ground and paralyzing him from the chest down.

## II.

▮ As an employer subject to the Workers' Compensation Act, the appellee would, ordinarily, be immune from common law liability for a work-related injury such as that suffered by the appellant. *W.Va.Code*, 23–2–6 [1991]; *Sias v. W–P Coal Co.*, 185 W.Va. 569, 573–74, 408 S.E.2d 321, 325–26 (1991). *See also Mandolidis v. Elkins Indus. Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). However, if the appellant's personal injury resulted from the "deliberate intention"[6] of the appellee to produce such injury, the appellee would lose immunity from common law liability. *Sias*, 185 W.Va. at 574, 408 S.E.2d at 326. The appellant sought to establish the appellee's "deliberate intention"

under *W.Va.Code*, 23–4–2(c)(2)(ii) [1991].[7] As this Court has previously stated: "A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code, § 23–4–2(c)(2)(ii) (1983)." Syl. pt. 2, *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990).[8]

At the close of the appellant's case-in-chief, the appellee timely moved for a directed verdict, which the trial court granted, finding that the appellant had failed to establish three of the five required elements of "deliberate intention": (1) a specific unsafe working condition; (2) subjective realization; and (3) intentional exposure.[9]

▮ It is the appellant's contention that, in granting the appellee's motion for a directed verdict, the trial court erred in its assessment of the evidence and abused its discretion. *W.Va.Code*, 23–4–2(c)(2)(iii)(B) [1991] provides, in relevant part:

6. *W.Va.Code*, 23–4–2 [1991] sets forth two separate and distinct methods of proving "deliberate intention." One theory is contained in *W.Va. Code*, 23–4–2(c)(2)(i), while a second theory is found in *W.Va.Code*, 23–4–2(c)(2)(ii). Syl. pt. 2, *Mayles v. Shoney's Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990).

7. *W.Va.Code*, 23–4–2(c)(2)(ii) [1991] provides:

(2) The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:

....

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or

not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

8. In *Mayles, supra*, this Court discussed the five elements of "deliberate intention" under the 1983 version of *W.Va.Code*, 23–4–2. That statute was amended in 1991. However, the provisions relevant to this case, that is, *W.Va.Code*, 23–4–2(c)(2)(ii), are identical to the 1983 version.

9. We note that neither the trial transcript nor the order granting the appellee's motion for a directed verdict sets forth, in detail, the trial court's analysis regarding the appellant's evidence of "deliberate intention" under *W.Va.Code*, 23–4–2 [1991].

[C]onsistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action ... upon timely motion for a *directed verdict* against the plaintiff *if after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court shall determine that there is not sufficient evidence to find each and every one of the facts required to be proven by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii)*[.]

(emphasis added). Furthermore, this Court stated in syllabus point 1 of *Delp v. Itmann Coal Co.,* 176 W.Va. 252, 342 S.E.2d 219 (1986):

‘ "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767 (1932).' Syllabus Point 1, *Jenkins v. Chatterton,* 143 W.Va. 250, 100 S.E.2d 808 (1957).

Therefore, we must review, in the light most favorable to the appellant, whether the appellant introduced sufficient evidence to satisfy each requirement under the "deliberate intention" statutory exception to employer immunity.

## A.

## SPECIFIC UNSAFE WORKING CONDITION

The appellant alleged two specific unsafe working conditions which presented a high degree of risk and a strong probability of serious injury: (1) that the five steel beams, or girders, were not safely stored in the storage area, in that they were not properly braced to keep them from falling and (2) that the boom crane that was used to move the beams was in a defective condition and was not the proper equipment to be used for this job. *W.Va.Code,* 23–4–2(c)(2)(ii)(A) [1991]. While the trial court recognized that bridge construction is, by its nature, dangerous work, it indicated that the evidence failed to establish that a specific unsafe working condition existed which caused the appellant's injury. Upon review of the evidence concerning the storage of the beams as well as the condition and use of the boom crane, we disagree with the trial court's finding that there was no specific unsafe working condition.

At trial, the appellant presented the expert testimony of Perry Jones, former safety compliance officer and area director for the Occupational Safety and Health Administration ("OSHA") in Charleston, West Virginia. Mr. Jones reviewed the Maryland Occupational Safety and Health ("MOSH")[10] investigation report of the appellant's accident from which he opined that the appellee had violated 29 C.F.R. § 1926.250(b)(9) (1993),[11] which requires that steel beams, or girders, which are being stored, be blocked or braced so as to prevent tilting, slipping or moving. At the appellee's job site, the beams were braced with timbers only on the outer side of the outermost beams, thus, tending to prevent only the two outside beams from falling away from the center of the stack. It was one of the interior beams which had no bracing of any kind applied to it that fell on the appellant.[12] According to Mr. Jones, had the beams been adequately blocked and braced, the appellant would not have been injured.

10. According to Mr. Jones, the occupational, safety and health standards adopted by the state of Maryland are the same as the federal standards.

11. 29 C.F.R. § 1926.250(b)(9) (1993) states that "[s]tructural steel, poles, pipe, bar stock, and other cylindrical materials, unless racked, shall be stacked and blocked so as to prevent spreading or tilting."

12. Mr. Jones further opined that the appellee violated 29 C.F.R. § 1926.20(b)(2) (1993), which requires an employer to conduct frequent and regular inspections of the workplace, by a competent person. Mr. Jones' found nothing in the appellee's file to indicate that these required inspections had been done.

Similarly, Steven Cooper, Safety Director for the Iron Workers International Union of North America and former employee of the National Institute of Occupational Safety and Health in Washington, D.C., testified that he, too, believed that the appellee's failure to properly brace the stored beams violated 29 CFR § 1926.250(b)(9) (1993). Mr. Cooper based his opinion on the MOSH report, the affidavits of Mr. Lesher and Mr. Singleton, the appellant's co-workers, and the appellant's deposition.

In addition, John McMahan, Executive Director of the Institute of the Iron Working Industry, testified that it is industry practice, when storing steel beams, or girders, to unload the steel, shore it and brace it so that it will not fall over at the job site. Mr. McMahan further testified that the ideal way to store steel is to have it shipped to the job site in the proper sequence so that it may be moved to the staging area in that order. Mr. McMahan also indicated that the beams should have been spaced such that there would have been sufficient room to brace each beam individually.

The appellant also elicited testimony from Mr. Jones and Mr. Cooper concerning the condition of the boom crane used to move the steel beams. Both witnesses testified that the condition of the crane violated 29 C.F.R. § 1926.550 (1993). Mr. Jones also testified that this crane was not the proper equipment to be used for moving the steel beams.

According to Mr. Jones, the appellee violated 29 C.F.R. § 1926.550(a)(1) (1993), which requires the appellee to:

[C]omply with the manufacturer's specifications and limitations applicable to the operation of any and all cranes and derricks. Where manufacturer's specifications are not available, the limitations assigned to the equipment shall be based on the determinations of a qualified engineer competent in this field and such determinations will be appropriately documented and recorded....

Mr. Jones further opined that the appellee violated 29 C.F.R. § 1926.550(a)(2), which provides that "[r]ated load capacities, and recommended operating speeds, special hazard warnings, or instruction, shall be conspic-uously posted on all equipment. Instructions or warnings shall be visible to the operator while he is at his control station." Finally, Mr. Jones testified that the appellee violated 29 C.F.R. § 1926.550(a)(5) and (g) (1993) concerning inspections of the equipment. 29 C.F.R. § 1926.550(a)(5) (1993) provides "[t]he employer shall designate a competent person who shall inspect all machinery and equipment prior to each use, and during use, to make sure it is in safe operating condition. Any deficiencies shall be repaired, or defective parts replaced, before continued use." Finally, 29 C.F.R. § 1926.550(a)(6) (1993) provides "[a] thorough, annual inspection of the hoisting machinery shall be made by a competent person, or by a government or private agency recognized by the U.S. Department of Labor. The employer shall maintain a record of the dates and results of inspections for each hoisting machine and ·piece of equipment." According to Mr. Jones, the defects in the crane would have been discovered by a daily inspection by a competent person and such defects could have been corrected. Furthermore, the crane operator would have no way of knowing if the crane was being overloaded with the nine and one-half ton beams because the crane had been modified without the manufacturer's approval. Finally, nothing had been done to the crane to change the capacity or to limit the extension of the boom and the weight being carried.

Furthermore, it was Mr. Cooper's opinion that, not only did the condition of the crane violate 29 C.F.R. 1926.550, but the boom also was faulty and should not have been used at all until it was taken out of service to ensure that it would not fall again.

### B.

### SUBJECTIVE REALIZATION

■ The second element of the statutory five-part test is that the appellee had a subjective realization and appreciation of the specific unsafe working condition and the high degree of risk and strong probability of serious injury presented by such condition. *W.Va.Code,* 23–4–2(c)(2)(ii)(B) [1991]. As we stated in *Sias,* 185 W.Va. at 575, 408 S.E.2d

at 327, "[s]ubjective realization, like any state of mind, must be shown usually by circumstantial evidence, from which, ordinarily, conflicting inferences reasonably can be drawn." The appellant's evidence at trial included the testimony of the appellant and co-workers Dennis Lesher and Tommy Singleton. All three witnesses testified that their foreman, James Fluker, directed them in the storage of the beams and told them to put timbers only on the outside of the outermost beams.

Several of the appellant's trial witnesses testified that the boom crane used at the time of the appellant's accident had dropped its load on several occasions, the fact of which the appellee was well aware. Mr. Lesher testified that approximately two months prior to the appellant's accident, the boom crane, while carrying a load of diaphragms, dropped its load while moving from one place to another. The superintendent on that job site was J.T. Phillips and the foreman was James Fluker, the same men who were on the job site when the appellant was injured.

Crane operator Jimmy Singleton testified that, prior to the appellant's accident, he was operating the crane at the Maryland job site. After picking up a beam and starting out with it, the boom fell, knocking over five beams. Mr. Singleton reported this incident to superintendent J.T. Phillips and Lee Pedigo, the superintendent for Metal State Steel. Mr. Singleton also recounted a prior incident on a job site in Boone County, West Virginia, when he was operating this crane and the boom fell. Mr. Singleton reported that incident to James Fluker.

Co-worker Clyde Treadway testified that Foreman Fluker knew about the boom drops because, at a prior job site, Mr. Fluker had to operate the sideboom himself when crane operator Chester Meadows refused to do so. There had been complaints to either the job steward, Dana Bragg, or the superintendent concerning the safety of the boom crane. When no one would operate the crane, Mr.

Fluker did it himself, stating that the job had to be done.

Mr. Lesher, Mr. Singleton and Mr. Bragg all testified that just after the appellant's accident, a safety meeting was called at the Maryland job site. When Superintendent Phillips was questioned about the falling side boom, he replied that it had been falling for twenty years and that there was nothing they could do to fix it. Phillips told the workers that he had asked for a new boom but the appellee would not provide him with one.

### C.

### VIOLATION OF SAFETY STANDARDS

The third element required to show "deliberate intention" is that the specific unsafe working condition violated a safety statute, rule or regulation or a commonly accepted and well-known safety standard. *W.Va.Code*, 23–4–2(c)(2)(ii)(C) [1991]. The trial court found that the appellant satisfied this element through the expert testimony of Mr. Jones, Mr. Cooper and Mr. McMahan.[13] Because we agree with the trial court's conclusion, no further discussion of this element is necessary.

### D.

### INTENTIONAL EXPOSURE

For the fourth element to be satisfied, the appellant was required to show that the appellee intentionally exposed him to the specific unsafe working condition, which violated a specific safety standard and which the appellee subjectively realized and appreciated. *W.Va.Code*, 23–4–2(c)(2)(ii)(D); *Sias*, 185 W.Va. at 575, 408 S.E.2d at 327. In *Sias*, we indicated that intentional exposure by the employer may be inferred if "the employer acted with the required specific knowledge ('subjective realization' and appreciation of a specific unsafe working condition violative of a specific safety standard) and intentionally

---

**13.** The office of Maryland Occupational Safety and Health issued several citations against the appellee following the appellant's accident. However, witnesses Jones, Cooper and McMahan were not permitted to specifically refer to these citations because the appellee entered into a settlement agreement with MOSH, evidence of which was inadmissible at trial. As indicated above, the witnesses were permitted to refer to the MOSH report generally.

 

exposed the employee to the specific unsafe working condition." *Id.* (citations omitted).

As indicated above, under "subjective realization," the crane had malfunctioned on several occasions before the appellant's accident. The appellee's supervisory personnel was well aware of the crane's defects. Foreman James Fluker was even forced to operate it when workers refused to do so. Furthermore, Mr. Lesher testified that Mr. Fluker told him and the appellant which beams to take out and where and how to store the beams. Mr. Fluker directed them to put the timbers on the outside of the outermost beams only. Mr. Singleton similarly testified that the beams were stored and braced at Mr. Fluker's direction. In light of this evidence, we disagree with the trial court's conclusion that the appellant failed to establish the intentional exposure element of "deliberate intention."

### E.

### PROXIMATE CAUSE

The final element of the statutory "deliberate intention" test is that the employee suffered serious injury or death as a proximate result of the specific unsafe working condition. *W.Va.Code,* 23–4–2(c)(2)(ii)(E) [1991]. The trial court found this element to have been met, in light of the serious injury suffered by the appellant. Therefore, we do not find it necessary to further discuss this element.

### III.

Upon viewing the evidence in the light most favorable to the appellant, we believe that the appellant sufficiently satisfied the requirements of *W.Va.Code,* 23–4–2(c)(2)(ii) [1991] to establish "deliberate intention" on the part of the appellee for appellant's work-related injury under the statutory five-part test, thus precluding a directed verdict against the appellant. Syl. pt. 2, *Sias, supra;* syl. pt. 2, *Mayles, supra.* Therefore, the trial court erred in directing a verdict in favor of the appellee. Accordingly, the judgment of the Circuit Court of Raleigh County

is reversed, and this case is remanded to the circuit court.

Reversed and remanded.