# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Lisa Clark,**
**Plaintiff Below, Petitioner**

**vs) No. 14-0431** (Cabell County 12-C-785)

**St. Mary's Medical Center, Inc.,**
**Defendant Below, Respondent**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Lisa Clark, by counsel Guy R. Bucci and Mark A. Barney, appeals the Circuit Court of Cabell County's order granting summary judgment entered on April 3, 2014, in favor of Respondent St. Mary's Medical Center, Inc., and dismissing her deliberate intent suit. Respondent, by counsel Ancil G. Ramey, Anders W. Linberg, and Gregory P. Neil, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts and Procedural History

This appeal stems from the summary judgment dismissal of petitioner's deliberate intent[1] suit against her employer, Respondent St. Mary's Hospital. Petitioner is an experienced intensive

---

[1] An employer's immunity from suit provided under the worker's compensation system may be lost if the plaintiff employee establishes all of the following elements:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted

1

care unit ("ICU") nurse. She filed suit after she was allegedly injured by a patient at St. Mary's Hospital who was assigned to her on August 5, 2011. The circuit court granted respondent's motion for summary judgment by order entered on April 3, 2014.

The patient who allegedly injured petitioner arrived at respondent's cardio vascular intensive care unit on August 4, 2011, and was suffering from Rocky Mountain Fever. The patient's condition caused him to suffer confusion and an altered mental state. However, the nurses and doctors who had cared for him during his hospital stay testified that he was neither violent nor dangerous, and had not attacked or injured anyone prior to the alleged incident with petitioner.

On August 5, 2011, shortly after petitioner arrived on the unit for the start of her shift, the patient was confused, got out of bed, and urinated on the floor, as he had done periodically the previous night. Petitioner states that, because of the patient's size, she asked not to be assigned to care for him, but the request was refused by respondent.[2] Petitioner and a male nurse who had cared for the patient during the shift prior to petitioner's shift attempted to direct the patient back to his bed.[3] Deposition testimony revealed that the male nurse interlaced his arm around one of the patient's arms and petitioner allowed the patient to place his arm around her shoulders. Petitioner claims that, as they were directing the patient back to his bed, the patient suddenly used both of his arms to put her in a headlock and violently twisted her neck and shoulders. The

---

and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one [§ 23-4-1], article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W.Va. Code § 23-4-2(d)(2)(ii).

[2] Petitioner states that she is 5'4'' and the patient was 6'3" and weighed 350 pounds.

[3] The male nurse's report indicated that the patient was confused and resisted returning to his bed until the patient finished urinating. The nurse's report also stated that during these episodes, the patient's "arms would flay and often he would grab in attempt to maintain balance[.]"

2

other nurses in the room heard petitioner exclaim, "you hurt my neck," but no one saw the patient exhibit any violent action toward petitioner. In fact, the male nurse testified that, because he had his arm interlaced with the patient's arm the entire time, it would have been impossible for the patient to use both of his arms to twist petitioner as she claimed. Another nurse testified that she observed the entire scenario and that the patient simply pulled his arm away from petitioner, then petitioner "screamed 'ow'" and "smacked the patient in the head."

As a result of the incident, petitioner claimed that she suffered from "thoracic outlet syndrome," or "TOS," which allegedly caused her to have pain, numbness, and tingling in her left fingers, hand, wrist, elbow, shoulder, and neck, which subsequently migrated to her right arm. Petitioner states that her injuries required surgery and left her disabled and unable to work full-time.

According to the medical testimony and records below,[4] the circuit court found that TOS is a controversial and obscure medical condition, the symptoms of which can be mimicked by numerous other conditions, such as carpal tunnel syndrome, cubital tunnel syndrome, Reynaud's disease, degenerative disc disease, and other nerve and vascular disorders. Petitioner's medical records indicated that she had complained of symptoms similar to those she complained were caused by the patient with Rocky Mountain Fever since at least 1994. Petitioner's medical records indicated multiple past reports of pain and/or numbness and tingling in her hands, feet, arms, neck, and back, as well as insomnia and anxiety. Petitioner also underwent gastric bypass surgery in 2004 due to numerous problems, including degenerative joint disease. She underwent carpal and cubital tunnel surgery in 2009. Petitioner had been previously diagnosed with Reynaud's disease in both hands and both feet. She had been treated regularly for the above-mentioned injuries, as well as depression and migraine headaches, prior to 2011. Additionally, petitioner admitted that, in the past, she was injured after being thrown from a horse and after a snowboarding accident. Ultimately, after being made aware of petitioner's past medical history, petitioner's surgeon, who diagnosed her with TOS, admitted that he could not tell whether petitioner's injuries occurred in 2007, 2008, or 2011.

By order entered April 3, 2014, the circuit court granted respondent's motion for summary judgment. Specifically, the court first concluded, as a matter of law, that petitioner failed to establish that the patient, who despite being anxious and confused, constituted "a specific unsafe working condition . . . in the workplace which presented a high degree of risk and a strong probability of serious injury or death." W.Va. Code § 23-4-2(d)(2)(ii)(A). Next, the court concluded that petitioner failed to establish a genuine issue of fact with regard to whether respondent had "actual knowledge" of the alleged unsafe condition as required by West Virginia Code § 23-4-2(d)(2)(ii)(B). As to these first two elements, the court noted that no hospital staff member would testify that the patient was violent or that he was likely to cause serious injury or death. Prior to the incident, the patient had not been responsible for any type of injury, let alone serious injury or death. Third, the circuit court concluded that, having failed to establish a

---

[4] It appears that disclosure of petitioner's medical records was a subject of dispute before the circuit court. Certain records were produced only after the circuit court granted respondent's motion to compel, a ruling in which the court also required that petitioner pay respondent's attorney's fees incurred as a result of the dispute.

specific unsafe working condition or respondent's actual knowledge thereof, petitioner could not demonstrate that respondent intentionally exposed her to such a condition as required by West Virginia Code § 23-4-2(d)(2)(ii)(D). Finally, the circuit court ruled that, because of petitioner's long history of similar medical problems and the obscure nature of TOS, it was necessary for petitioner to present medical evidence to establish causation. On this point, the circuit court found that none of petitioner's physicians were able to state that petitioner's injuries were proximately caused by the incident on August 5, 2011. Accordingly, the circuit court found that petitioner failed to establish West Virginia Code § 23-4-2(d)(2)(ii)(E) as well.[5] Petitioner now appeals to this Court.

## Discussion

Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." W.Va.R.Civ.P. 56(c). "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). With respect to deliberate intent claims, this Court has held that

> a court shall dismiss a deliberate intention action "upon motion for summary judgment if it finds . . . that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist." W.Va. Code § 23–4–2(d)(iii)(B). Each of the five statutory factors "is an essential element of a 'deliberate intention' cause of action, which a plaintiff has the ultimate burden to prove. Therefore, at the summary judgment stage, if a defendant should establish that no material issue of fact is in dispute on any one of the factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant." *Mumaw v. U.S. Silica Co.,* 204 W.Va. 6, 11, 511 S.E.2d 117, 122 (1998). Finally, "'in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors.'" *Marcus v. Holley,* 217 W.Va. 508, 520, 618 S.E.2d 517, 529 (2005) (citation omitted) (footnote omitted).

*Smith v. Apex Pipeline Services, Inc.,* 230 W.Va. 620, 628, 741 S.E.2d 845, 853 (2013). "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

On appeal, petitioner raises six assignments of error, the first four of which challenge the circuit court's conclusions with respect to subsections (A), (B), (D), and (E) of the deliberate intent statute, West Virginia Code § 23-4-2(d)(2)(ii). First, she contends that the circuit court

---

[5] The circuit court stated that it was unnecessary to address the safety regulations/industry standard requirements in West Virginia Code § 23-4-2(d)(2)(ii)(C).

erred in finding no genuine issue of material fact with respect to whether the patient constituted "a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death." W.Va. Code § 23-4-2(d)(2)(ii)(A). As the circuit court found, all of the medical professionals who cared for the patient testified, contrary to petitioner's repeated unfounded assertions throughout her brief that the patient was violent, that the patient was in fact neither violent nor dangerous, let alone likely to cause serious injury or death. Moreover, petitioner admits that she had been in the unit for only fifteen minutes when the alleged attack occurred and she had "no idea" whether the patient had acted violently prior to her arrival. Despite the size difference between the patient and petitioner, we cannot find that she has raised a genuine issue of fact with respect to subsection (A) of the statute. Accordingly, summary judgment for respondent was proper.[6]

Second, petitioner argues that she presented sufficient evidence to overcome summary judgment as to whether respondent had "actual knowledge" of the specific unsafe working condition, as required by West Virginia Code § 23-4-2(d)(2)(ii)(B). The "actual knowledge" requirement "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syl. Pt. 3, in part, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991). As noted above, the record demonstrates that the patient had not acted violently prior to petitioner's arrival on the unit, and none of respondent's staff believed him to pose a danger. There was also nothing established in the record below to show that respondent knew that the patient would likely cause serious injury or death. Accordingly, we see no error with respect to petitioner's second assignment of error.

Third, petitioner argues that the circuit court erred in concluding that she failed to establish that respondent "intentionally exposed" her to the unsafe working condition, as required by West Virginia Code § 23-4-2(d)(2)(ii)(D). Petitioner contends that she advised her supervisor of her concerns about caring for such a large patient, but was forced to do so anyway. In her brief to this Court, petitioner states that in 2011, there were fourteen incidents of patient violence at respondent's hospital, and in 2010, there were ten such incidents. She adds that the safety manual adopted by respondent states that one occurrence is average and three is high, yet, respondent still took no additional action to protect its employees. However, petitioner's assertions regarding the "intentional exposure" element find insufficient support in the record to overcome summary judgment. As respondent points out, at the time petitioner alleges she was injured, she was being assisted by the male nurse who had just come off his shift. Additionally, there was no fewer than four of respondent's staff members present at the time. Merely because respondent did not excuse petitioner from attending to the patient because of his size does not mean that respondent intentionally exposed her to an unsafe condition in the deliberate intent context. Moreover, the "intentional exposure" element of West Virginia Code § 23-4-2(d)(2)(ii)(D) is premised on the first two elements, which are not present in this case. This Court

---

[6] As discussed above, in order to establish deliberate intent, petitioner must show all five elements set forth in the statute; the failure to establish any single element is fatal to her claim. Nevertheless, we will address petitioner's remaining arguments related to her deliberate intent claim.

has held that "with respect to the intentional exposure requirement, we have recognized that 'there . . . must be some evidence that, with conscious awareness of the unsafe working condition . . . an employee was directed to continue working in that same harmful environment.'" *Coleman Estate ex rel. Coleman v. R.M. Logging, Inc.,* 226 W.Va. 199, 208, 700 S.E.2d 168, 177 (2010) (quoting *Tolley v. ACF Industries, Inc.,* 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002)). Therefore, petitioner failed as a matter of law to establish that respondent intentionally exposed her to an unsafe working condition as required by West Virginia Code § 23-4-2(d)(2)(ii)(D).

Fourth, petitioner contends that the circuit court erred in finding no genuine issue of material fact with regard to whether her injuries were proximately caused by the alleged unsafe condition, as required by West Virginia Code § 23-4-2(d)(2)(ii)(E). We have held that in cases where the claimed injury is "obscure" and not clearly apparent to a lay person, the plaintiff must offer expert medical testimony that the serious injury was the direct and proximate result of the specific unsafe working condition. *See Strahin v. Cleavenger,* 216 W.Va. 175, 603 S.E.2d 197 (2004); *Addair v. Litwar Processing Co., LLC,* No. 11-0397, 2012 WL 2914980 (W.Va. Feb. 9, 2012) (memorandum decision). In the present case, there is no question that petitioner's TOS diagnosis constitutes an "obscure" injury requiring expert testimony to establish causation. And, while true that petitioner's physician had previously testified her injuries were compensable, important medical facts regarding petitioner's prior medical history were discovered after her physician made the TOS diagnosis. The record before this Court demonstrates that none of petitioner's physicians, when made aware of petitioner's medical history, could testify to a reasonable degree of medical probability that petitioner's TOS was caused by the alleged incident with the patient. Accordingly, we find no error in (1) the circuit court's refusal to accept petitioner's workers' compensation compensability determination as dispositive on this issue and (2) in its conclusion that without the required expert testimony to establish causation, petitioner cannot overcome summary judgment on element (E).

In her fifth assignment of error, petitioner challenges the circuit court's refusal to allow her additional time to secure an affidavit from one of her treating physicians regarding her injuries prior to granting summary judgment to respondent. Petitioner states that, at the February 13, 2014, hearing on respondent's motion for summary judgment, the circuit court required that petitioner submit an affidavit from one her physicians stating that her injury was "to a reasonable degree of certainty" related to the incident with the patient in question. Petitioner states that the court required her to submit the affidavit in short order – by Monday, February 17, 2014. Petitioner states that she moved for a continuance on February 14, 2014, after learning that her physician was out of his office.

Rule 56(f) of the West Virginia Rules of Civil Procedure requires that "[t]he party seeking a continuance must show due diligence both in pursuing discovery before the summary judgment initiative surfaced and in pursuing an extension of time thereafter." F. Cleckley, R. Davis & L. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure 4*[th] at § 56(f)[2] (2014). We note that the physician at issue in petitioner's continuance request was her treating physician from whom she had years to secure whatever evidence she needed to support her deliberate intent claim. Additionally, as respondent notes, the circuit court did not enter its summary judgment order until April 3, 2014, at which time petitioner still had not submitted the

affidavit. We see no error in the court's refusal to allow additional time for the submission of the affidavit.

Finally, petitioner argues that the circuit court abused its discretion in imposing sanctions for her refusal to provide requested medical records. Respondent states that it knew from petitioner's personnel file that she had a long history of the same symptoms that she attributed to the alleged incident in this case. Respondent further states that because petitioner was seeking three million dollars in economic damages, it was merely doing its due diligence in determining whether the diagnosis of TOS was the result of the incident with the patient. The record in this case demonstrates an unwillingness by petitioner to disclose her medical records, as evidenced by respondent having to file four motions to compel such disclosure. In her response to the final motion to compel, petitioner offered no substantive justification for her failure to comply with the court's prior directives to disclose her medical records. Therefore, upon our review, we cannot conclude that the circuit court abused its discretion in awarding respondent its attorney's fees in the amount of $3,467.40.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Menis E. Ketchum

7