550 S.E.2d 398

**Chester NUTTER and Alma Nutter, his wife, Plaintiffs below, Appellants,**

v.

**OWENS–ILLINOIS, INC., Defendant below, Appellee.**

**No. 28243.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2001.

Decided June 28, 2001.

Kenneth P. Hicks, Esq., Huntington, West Virginia, Donald R. Capper, Esq., Proctorville, OH, Attorneys for Appellants.

David K. Hendrickson, Esq., Robert A. Flaugher, Esq., Barbara A. Allen, Esq., Hendrickson & Long, P.L.L.C., Charleston, West Virginia, Attorneys for Appellee.

STARCHER, Justice:

In this appeal from the Circuit Court of Cabell County, we are asked to consider whether the circuit court erred in granting summary judgment to an employer in a "deliberate intention" action brought pursuant to *W.Va.Code*, 23–4–2(c)(2)(ii) [1991][1]. After careful examination of the record, the briefs of the parties, and all other matters of record, we find that genuine questions of material fact exist regarding whether the plaintiff-employee's damages are a result of the defendant-employer's violation of the aforementioned statute. As set forth below, we reverse the circuit court's summary judgment order and remand the case for further proceedings.

## I.

### *Facts & Background*

Owens–Illinois, Inc., the defendant below and appellee, operated a glass-making plant in Huntington, West Virginia. Owens–Illi-

---

1. The Legislature amended *W.Va.Code*, 23–4–2 in 1994, subsequent to the plaintiff's injury. However, no changes were made that would affect the instant appeal.

nois would often perform safety inspections of its plant. Some of these inspections would include testing for levels of carbon monoxide around equipment with combustion engines, such as forklifts operating on the loading docks.

The plaintiff asserts that regulations imposed by the U.S. Occupational Safety and Health Administration establish a maximum safe limit of 35 parts per million ("ppm") of carbon monoxide. In April 1992, a safety inspection of the Owens–Illinois plant by an outside inspector found that carbon monoxide levels were reaching 17 to 19 parts per million in a conference room that was *adjacent* to a loading dock. The safety inspector wrote a report indicating that the "source of the carbon monoxide is the tractors and lifts" used on the nearby loading dock, and that the carbon monoxide was being drawn into the room through a fresh air duct on the dock.

To correct the carbon monoxide problem, the safety inspector recommended that the plant "conduct exhaust gas tests on the forklifts and tractors to insure that minimum carbon monoxide levels are produced." The safety inspector further recommended that an analyzer be purchased so that the plant could conduct routine checks of levels of carbon monoxide, and ensure that its equipment was calibrated to produce a minimum level of carbon monoxide.

Another safety inspection was performed 3 months later in July 1992. The safety inspector again found high levels of carbon monoxide in offices and a conference room—levels "much higher than normal for these areas." The inspector further found that the "levels would elevate very quickly when forklifts were in the area, exceeding the 35 ppm allowable limit." Test results attached to the safety inspection report indicate carbon monoxide levels ranging from 12 parts per million in office spaces with the air conditioning turned off, to 71 parts per million in loading areas when "Forklift # 53 went by."

For a second time, the safety inspector recommended that the plant "acquire a carbon monoxide analyzer for proper adjusting of the powered equipment." The record indicates that Owens–Illinois never purchased the carbon monoxide analyzer, and never adjusted the equipment to reduce carbon monoxide output.

The plaintiff below and appellee, Chester Nutter, was employed by Owens–Illinois as a maintenance carpenter. On April 27, 1993, the plaintiff, along with several other Owens–Illinois employees, was performing renovations to an interior area of the plant known as the "old cafeteria." Doors to the area were removed, and in their place plastic sheets were hung from the ceiling to seal off the area and prevent dust from entering other areas of the plant. To perform work, three machines with combustion engines were used in the renovations. A forklift was used to assist with knocking down walls; a "bobcat" was used to pick up and move bricks and debris; and a tractor with a cullet wagon was used to haul debris to another location.

During the morning of April 27, the plaintiff was removing the suspended ceiling of the old cafeteria. A basket was secured to the forklift, and the plaintiff was lifted in the basket to a height where he could remove an area of ceiling tile. The forklift would then be driven to different areas in the room to remove other areas of ceiling tile. Throughout the morning, the engine of the forklift was turned on and off intermittently. Other employees used the basket affixed to the forklift to remove duct work from the ceiling. It appears that the engines of the bobcat and tractor were also turned on and off throughout the morning as they were used in the old cafeteria.

During his lunch break on April 27, the plaintiff became ill, complaining of a severe headache and nausea. The plaintiff was taken to a local hospital where a blood test revealed he had been exposed to high levels of carbon monoxide. While a "normal" carboxyhemoglobin test will show levels near zero, a test of the plaintiff's blood showed a carboxyhemoglobin level of 21%. The plaintiff now contends that as a result of his exposure to carbon monoxide, he has permanent injuries including continuous and uncontrollable shaking.

At approximately the same time that the plaintiff was becoming ill, a supervisor went

to the old cafeteria to inspect the progress of some electrical work. The supervisor recalls having a headache, and leaving the area to check on other work. The supervisor later concluded that his headache was caused by carbon monoxide, and he immediately returned to the old cafeteria. The room was evacuated, and no other work was performed in the old cafeteria that day.[2]

The plaintiff, along with his wife Alma Nutter, filed the instant action in the Circuit Court of Cabell County against Owens–Illinois. The plaintiff alleged that his injuries resulted from Owens–Illinois' violation of the "deliberate intention" provisions of our workers' compensation law, *W.Va.Code*, 23–4–2(c) [1991].[3]

Owens–Illinois later filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law because the plaintiff could not prove all of the elements necessary to recover under the deliberate intention statute. Owens–Illinois apparently conceded below that a specific unsafe working condition existed in the workplace—namely, gas powered equipment producing high levels of carbon monoxide in an enclosed area—and that this condition presented a high degree of risk and a strong probability of serious injury or death. *See W.Va.Code*, 23–4–2(c)(ii)(A). However, the defendant argued that the plaintiff could not prove that Owens–Illinois had a subjective realization and appreciation of the existence of the unsafe working condition (*W.Va.Code*, 23–4–2(c)(ii)(B)); and could not prove that Owens–Illinois intentionally exposed the plaintiff to the specific unsafe working condition (*W.Va.Code*, 23–4–2(c)(ii)(D)).[4]

**2.** The supervisor, Dale Fuller, was an electrical crew leader. He testified in a deposition that he went into the old cafeteria to check the progress of some electrical work, and recalled having a headache. He later left the area, stating:

> ... so I left and went up to my office. And I opened up the windows to the outside and stuck my head out and took four or five big breaths of air, and my headache got better. I sat back down at my desk and I thought, What in the world is going on. Then it hit me, and I called the plant engineer and told him, I said, You get down there and get them people out of that room, I said, there is carbon monoxide in that room, and I am on my way down there too.

**3.** *W.Va.Code*, 23–4–2(c)(2) [1991] allows a legal claim against an employer for a work-related death or injury if:

> (i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or
>
> (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
>
> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;
>
> (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and
>
> (E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

**4.** Before the circuit court, Owens–Illinois also challenged whether the plaintiff had presented evidence that Owens–Illinois had violated any state or federal safety statute or regulation, or any commonly accepted and well-known safety standard, as required by *W.Va.Code*, 23–4–2(c)(2)(ii)(C).

The circuit court concluded that genuine questions of material fact exist regarding whether the defendant violated a safety statute or regulation.

In an order dated November 22, 1999, the circuit court granted summary judgment to Owens–Illinois and dismissed the plaintiff's claims. The circuit court found that the "plaintiff was the only employee who reported feeling ill on the day of the accident," and that no other employees working in the old cafeteria had complained about carbon monoxide or other fumes to Owens–Illinois. The circuit court also found no other employees of Owens–Illinois had ever reported suffering illness after being exposed to carbon monoxide.[5] The circuit court therefore ruled that Owens–Illinois did not realize or appreciate the existence of dangerous levels of carbon monoxide in the "old cafeteria," as required by *W.Va.Code*, 23–4–2(c)(2)(ii)(B), and further could not have intentionally and knowingly exposed the plaintiff to the carbon monoxide, as required by *W.Va.Code*, 23–4–2(c)(2)(ii)(D).

The plaintiff now appeals the circuit court's summary judgment order.

## II.

### *Standard of Review*

■ We review the circuit court's summary judgment order *de novo*. We have often stated that we review *de novo* a circuit court's entry of summary judgment under Rule 56 of the *West Virginia Rules of Civil Procedure*, and apply the same standard that the circuit courts employ in examining summary judgment motions. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We established the traditional standard for granting summary judgment in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963) where we held:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and

inquiry concerning the facts is not desirable to clarify the application of the law.

## III.

### *Discussion*

In the instant case, the parties appear to agree that genuine issues of fact exist concerning whether a "specific unsafe working condition" existed at the Owens–Illinois plant when the plaintiff was allegedly injured. *See W.Va.Code*, 23–4–2(c)(2)(ii)(A). The working condition at issue is whether the engines of the powered equipment used by Owens–Illinois—such as the forklifts—were improperly adjusted and produced excessive levels of carbon monoxide, particularly when used in an enclosed area. The existence of a specific unsafe working condition alone, however, is insufficient to support a deliberate intention cause of action.

To be held liable under the deliberate intention statute, *W.Va.Code*, 23–4–2(c)(2)(ii)(B) requires that an employer have both "a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong possibility of serious injury or death presented by such specific unsafe working condition." "This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syllabus Point 3, in part, *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991).

Furthermore, *W.Va.Code*, 23–4–2(c)(2)(ii)(D) requires that a plaintiff present material evidence that, notwithstanding the fact that the employer had a subjective real-

---

Owens–Illinois does not challenge this conclusion in the instant appeal.

**5.** The plaintiff disputes this factual conclusion. The plaintiff cites to deposition testimony in the record by a witness who worked as a machine repairman for Owens–Illinois. The witness was also the president of the union for Owens–Illinois' employees. The witness' testimony suggests that the company had received numerous

complaints about the exhaust coming from the motors of the powered equipment. The witness testified that "[w]hen you had a complaint by the time they got the complaint to the responsible people the workers usually were done and they had moved on. Or they would quit for a while."

It is unclear why this deposition testimony was not considered by the circuit court in its summary judgment order.

ization and appreciation of the unsafe working condition,[6] "such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally[.]"

The plaintiff argues that the circuit court erred in granting summary judgment because genuine issues of fact exist regarding whether defendant Owens–Illinois injured the plaintiff with deliberate intention as set forth in *W.Va.Code*, 23–4–2(c)(2)(ii). The plaintiff contends that a reasonable fact-finder could conclude from the evidence that Owens–Illinois had actual, subjective knowledge that the forklifts and other equipment used at the Owens–Illinois plant produced elevated levels of carbon monoxide—levels in excess of federal safety regulations. Second, the plaintiff contends that the evidence indicates that Owens–Illinois, notwithstanding its knowledge that the equipment created a specific, unsafe condition, intentionally placed the plaintiff in a closed room where he would be exposed to elevated levels of carbon monoxide.

Owens–Illinois, however, argues that the plaintiff did not establish the existence of prior injuries or complaints related to carbon monoxide exposure at the plant. Owens–Illinois therefore contends that the plaintiff failed to establish a question of fact regarding whether Owens–Illinois realized that its powered equipment was improperly adjusted so as to be unsafe, and whether it appreciated the "high degree of risk and a strong possibility of serious injury" presented by operating the equipment in an enclosed room. We disagree.

◼ In Syllabus Point 2 of *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), we stated the plaintiff's burden of proof in a "deliberate intent" action:

A plaintiff may establish "deliberate intention" in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code § 23–4–2(c)(2)(ii) (1983).

However, we went on in *Mayles* to approve a jury instruction stating that a plaintiff "need only prove" the five statutory elements of *W.Va.Code*, 23–4–2(c)(2)(ii), because such words "were used to explain that no higher burden [of proof] existed." 185 W.Va. at 97, 405 S.E.2d at 24.

◼ The defendant's argument that a plaintiff must introduce additional evidence—such as evidence of prior injuries or complaints about a working condition—to establish their case runs counter to our holding in *Mayles*. As we indicated in *Mayles*, to establish that an employer has acted with deliberate intention, no higher burden of proof exists beyond those five requirements set forth in *W.Va.Code*, 23–4–2(c)(2)(ii). Under the statute, whether an employer has a "subjective realization and appreciation" of an unsafe working condition and its attendant risks, and whether the employer intentionally exposed an employee to the hazards created by the working condition, requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn. *See, e.g., Sias v. W–P Coal Co.*, 185 W.Va. 569, 575, 408 S.E.2d 321, 327 (1991). Accordingly, while a plaintiff may choose to introduce evidence of prior similar incidents or complaints to circumstantially establish that an employer has acted with deliberate intention, evidence of prior similar incidents or complaints is not mandated by *W.Va.Code*, 23–4–2(c)(2)(ii).

◼ After carefully examining the record in the instant case, we find circumstantial evidence from which a reasonable jury could infer that Owens–Illinois had a subjective realization of a specific unsafe working condition—that its forklifts and other machines were producing high levels of carbon monoxide. The evidence suggests that the defendant knew, through inspections, that its equipment was producing levels of carbon monoxide apparently in excess of federal

---

**6.** The plaintiff must also establish, pursuant to *W.Va.Code*, 23–4–2(c)(2)(ii)(C), that the unsafe working condition violated a state or federal safety requirement or some well-known safety

standard within the industry. The parties do not dispute before this Court that questions of fact exist regarding this point. *See supra*, footnote 4.

safety requirements. It also suggests that safety inspectors employed by Owens–Illinois recommended that a carbon monoxide sampler be purchased by the plant, and that the equipment be adjusted to reduce the output of carbon monoxide. We therefore believe that questions of material fact exist regarding whether Owens–Illinois had a subjective realization and appreciation of the existence of a specific unsafe working condition and of the high degree of risk and the strong possibility of serious injury or death presented by such specific unsafe working condition.

As for the statutory requirement that the plaintiff prove he was intentionally exposed to a specific unsafe working condition, the plaintiff argues that Owens–Illinois knew that the use of forklift motors would cause carbon monoxide levels to exceed federally mandated safety requirements. The safety inspections performed by Owens–Illinois found elevated levels of carbon monoxide in enclosed offices which merely *adjoined* areas where forklifts were being used. The plaintiff asserts that, with this knowledge, the defendant still required the plaintiff to work in the enclosed old cafeteria with the motors of its powered equipment running. Accordingly, the plaintiff contends that a "genuine issue of material fact" exists with regard to whether the plaintiff can meet the standard of proof contained in *W.Va.Code*, 23–4–2(c)(2)(ii)(D). We agree.

After examining the record, we find that there is evidence to support a finding, notwithstanding the apparent knowledge that the forklifts and other machines were producing carbon monoxide in an amount apparently in excess of federal regulations, that Owens–Illinois exposed the plaintiff "to such specific unsafe working condition intentionally."

Accordingly, it appears that genuine issues of material fact exist regarding whether the plaintiff's damages are the result of the defendant's violation of our deliberate intention statute. We therefore hold that the circuit court erred in granting summary judgment to defendant Owens–Illinois.

## IV.

### Conclusion

The circuit court's November 22, 1999 order is reversed, and the case is remanded to the circuit court for further proceedings.

Reversed and Remanded.