696 S.E.2d 28 (2010)
Clarence T. COLEMAN ESTATE by Co-Administrators, Clarence COLEMAN and Helen M. Adkins, Plaintiffs Below, Appellants,
v.
R.M. LOGGING, INC., A West Virginia Corporation; Clonch Industries, Inc., A West Virginia Corporation; and John Robinson, Individually, Defendants Below, Appellees.
No. 35139.
Supreme Court of Appeals of West Virginia.
Submitted March 3, 2010.
Decided June 2, 2010.
*30 John R. Mitchell, John R. Mitchell, L.C., Charleston, WV, Joshua I. Barrett, Lonnie C. Simmons, Heather M. Langeland, DiTrapano, Barrett & DiPiero, PLLC, Charleston, WV, for Appellants.
Mary H. Sanders, Jessica L. Wiley, Huddleston Bolen LLP, Charleston, WV, for Appellee, R.M. Logging, Inc.
PER CURIAM:
This is an appeal by Clarence Coleman and Helen Adkins, plaintiffs below (hereinafter referred to as "the Plaintiffs"), from an order of the Circuit Court of Fayette County granting summary judgment in favor of the defendant below, R.M. Logging, Inc. (hereinafter referred to as "R.M. Logging"), in a workers' compensation deliberate intention action they filed after the work-related death of their son. In granting summary judgment in favor of the employer, R.M. Logging, the circuit court concluded that the Plaintiffs had failed to establish subjective knowledge and intentional exposure on the part of R.M. Logging, which factors represent two of the five elements required to prevail in a deliberate intention action. On appeal, the Plaintiffs argue that they presented sufficient evidence to create a question of fact regarding those two elements of a deliberate intention action. We agree and, therefore, reverse the February 11, 2009, summary judgment order of the circuit court and remand this case for further proceedings consistent with this opinion.

I.

FACTUAL AND PROCEDURAL HISTORY
R.M. Logging was engaged in the business of timber removal.[1] The Plaintiffs' decedent, Mr. Clarence T. Coleman (hereinafter referred to as "Mr. Coleman"), was employed by R.M. Logging as a timber cutter. On December 2, 2003, Mr. Coleman was working at a timbering site in the Cannelton Hollow area near Smithers, West Virginia, where, relevant to this action, he cut a large maple tree that fell to the ground. Mr. Coleman then cut a fifteen-inch diameter hickory tree that became lodged about twenty feet above the ground. After that, Mr. Coleman cut a third tree, an eighteen-inch diameter hickory, *31 that also became lodged. Following his cutting of the third tree, Mr. Coleman proceeded back toward the first tree he downed, the large maple. In doing so, he walked under the butt end of the hung fifteen-inch hickory. The hickory tree broke loose at that moment and fell, striking Mr. Coleman on the head. Although he was wearing a hard hat, the injury he sustained was fatal.
An inspection by the Occupational Safety & Health Administration (hereinafter referred to as "OSHA") followed the fatal injury. The OSHA inspection resulted in the issuance of eleven citations, including one for employee training that "did not consist of the recognition of safety and health hazards associated with the employee's specific work tasks."[2]
The Plaintiffs, who are Mr. Coleman's parents and the co-administrators of his estate, filed the instant workers' compensation "deliberate intention" action[3] against R.M. Logging and others[4] in the Circuit Court of Fayette County on June 17, 2005. In August 2006, R.M. Logging filed a motion for summary judgment, which was granted by the circuit court in an order dated September 20, 2006. In a prior appeal of this action, the Plaintiffs challenged the circuit court's September 20, 2006, summary judgement ruling. See Coleman Estate v. R.M. Logging, Inc., 222 W.Va. 357, 664 S.E.2d 698 (2008).[5] In Coleman I, this Court reversed the summary judgment order and remanded the case for further proceedings based upon the trial court's failure to address two motions that were pending at the time summary judgment was granted: (1) the Plaintiffs' motion to continue the scheduled trial date to take the deposition of Kelcey Nichols, a former employee of R.M. Logging, who had witnessed Mr. Coleman's death and the events surrounding the same, and (2) R.M. Logging's motion to exclude the evidence of Homer S. Grose, the Plaintiffs' expert. Coleman I.
Following remand to the circuit court, Mr. Nichols was deposed; however, the Appellant's expert, Homer S. Grose, died. The Appellants then retained James Dougovito as their liability expert. Mr. Dougovito issued a report and was deposed. On January 5, 2009, R.M. Logging filed a second motion for summary judgment. The circuit court once again granted summary judgment by order entered February 11, 2009. This appeal followed.

II.

STANDARD OF REVIEW
It is well established that "[a] circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, Painter v. Peavy, 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting our de novo review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963). Finally, we note that "[s]ummary judgment is appropriate where the record taken as a whole could not lead a *32 rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 4, Painter v. Peavy, 192 W.Va. 189, 451 S.E.2d 755. With these standards in mind, we proceed to address the issues raised in this appeal.

III.

DISCUSSION
As previously noted, the Plaintiffs have asserted a "deliberate intention" cause of action under the West Virginia Workers' Compensation Act. The requirements for the Plaintiffs' deliberate intention action are set forth in W. Va.Code § 23-4-2(d)(2) (2003) (Spec.Supp. Aug. 2003).[6] This Court has observed that "[t]he statute creating a legislative standard for loss of employer immunity from civil liability for work-related injury to employees found in [W. Va.Code § 23-4-2(d)(2) (2003) (Spec.Supp. Aug. 2003)] essentially sets forth two separate and distinct methods of proving `deliberate intention.'" Syl. pt. 1, Mayles v. Shoney's, Inc., 185 W.Va. 88, 405 S.E.2d 15 (1990). The Plaintiffs have asserted their deliberate intention action under the method set out in W. Va. Code § 23-4-2(d)(2)(ii). With regard to granting summary judgment in this type of case, the Legislature has declared that
the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the rules of civil procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist....
W. Va.Code § 23-4-2(d)(2)(iii)(B). "`Thus, in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors.'" Marcus v. Holley, 217 W.Va. 508, 520, 618 S.E.2d 517, 529 (2005) (quoting Mumaw *33 v. U.S. Silica Co., 204 W.Va. 6, 9, 511 S.E.2d 117, 120 (1998)).
In its motion for summary judgment, R.M. Logging argued that the Plaintiffs had failed to establish a genuine question of material fact as to two of the requirements of W. Va.Code § 23-4-2(d)(2)(ii). Specifically, R.M. Logging claimed that the Plaintiffs failed to establish the factors set out in subsections (B) and (D) of W. Va.Code § 23-4-2(d)(2)(ii). Subsection (B) requires proof "[t]hat the employer had a subjective realization and an appreciation of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition[.]" Subsection (D) requires proof "[t]hat notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless thereafter exposed an employee to the specific unsafe working condition intentionally[.]"
In support of its motion, R.M. Logging characterized the "unsafe working condition leading to the subject accident" as the "cut hickory tree that became lodged on a surrounding limb and the decedent's decision to walk under it." R.M. Logging argued that there was no evidence that it possessed subjective knowledge that the tree had become hung or that Mr. Coleman would walk under the hung tree. Additionally, R.M. Logging relied on the deposition testimony of Mr. Coleman's co-worker, Kelcey Nichols, who was working as a skidder operator on the day of Mr. Coleman's death and witnessed the incident. Mr. Nichols stated, "[i]t was just neglect on his part for not going up and around. There wasn't nothing anybody could do." With respect to the Plaintiffs' theories that Mr. Coleman was not properly trained to recognize the hazards of the work site and was not properly supervised, R.M. Logging argued that "such a fact, if proven, would only tend to show that RM Logging `should have known' Mr. Coleman would walk under the tree," and, therefore, did not meet the subjective realization standard for a deliberate intention action.
Finally, R.M. Logging argued that Plaintiffs had "failed to demonstrate Mr. Coleman was inadequately trained or supervised, as their only offer of proof for this allegation is the occurrence of the accident itself." To show that Mr. Coleman had been trained and supervised, R.M. Logging referred to the deposition testimony of three R.M Logging employees: Mr. John Robinson, R.M. Logging's foreman, who stated in his deposition that "I personallyevery timber cutter I hire, I cut with them for two weeks right beside of them and make sure that we got [sic] overall [sic] these things, the same way the State went over them for me";[7] Mr. Gary Moore, who stated that he saw his brother-in-law, Mr. Robinson, train "[a]ll the timber cutters that we ever employed"; and Kelcey Nichols, who stated that he had been trained by Mr. Robinson.
The Plaintiffs responded by arguing that they had presented more than sufficient evidence to establish a deliberate intention cause of action. In this regard, they relied, in part, upon the fact that OSHA had issued numerous citations to R.M. Logging following its investigation of Mr. Coleman's death. Notably included among the OSHA citations was one for violating a mandatory duty set out in 29 C.F.R. § 1910.266(i)(3)(iii).[8] This citation was issued based upon OSHA's finding that "[e]mployee training did not consist of the recognition of safety and health hazards associated with the employee's specific work tasks."
In addition, the Plaintiffs presented the opinions of their expert witness, Mr. James P. Dougovito, who opined that R.M. Logging could have been issued an additional nine *34 OSHA citations based upon its failure to document that any training or re-training of its employees had taken place. In addition, Mr. Dougovito testified that, based upon his review of the incident that led to Mr. Coleman's death, he had concluded that neither Mr. Coleman nor Kelcey Nichols had been properly trained, and that there had been inadequate supervision:
Q. And you're basing your opinion upon the fact that he [Mr. Coleman] continued cutting after one was hung?
A. No. After two was hung, after two trees were hung. One isget into terminologyone butt was suspended about 20 feet in the air, so that's just like a hung tree. So the fact that he continued to work in the immediate area after the first one was hung and, in addition, suspended another tree and then was working on a third in the immediate area, the training that he received was inadequate. And over the course of the months that he worked for the firm, that appeared that there's no supervision. Supervision should have corrected that.
Q. How do you know that he would have ever done that, hung a tree and not stopped, before this date that he died?
A. Well, because if he did it before, if that was part of his training and ingrained in his training and that's what the company wanted him to do and it was reinforced through training and through supervision, then after that first tree, he would have been out of the area.
And if the training, in fact, did take place, then Nichols would have stopped.
So you have two individuals that, if they were properly trainedthey were kind ofI look at them as a team because you have a skidder operator and a sawyer or a timber feller. Both of them look out for one another all the time on all jobs. So if they were trained properly, if one was doing something that was incorrect, the other should have impacted, if they were trained properly.
In addition, Mr. Dougovito testified as follows:
Q. So the basis for testifying that, having the opinion that [Mr. Coleman] was not properly trained, was because he didn't stop after the first tree was hung up to have it mechanically taken down and Kelcey Nichols did not get off of his skidder when he saw the plaintiff was not stopping and make him stop?
A. That's part of it. The other part is that when youif a timber cutter is properly trained, to hang two out of the three trees that he cut after lunch isleads me to believeit's my opinion he was inadequately trained, because when you fell trees, if you hang perhaps one or two a dayand not saying that you will never hang a tree if you're properly trained, but to hang two out of three, thatsome work needed to be done with [Mr. Coleman] on training.
. . . .
Q. You're taking maybe one hour of this employment with these three trees, maybe not even an hour's worth of time, but this one event, and extrapolating it out to this is not good training, not good supervision, just based on that?
A. Yes.
. . . .
A. Because it is kind of like a flashing red light. It's just glaring from the experience that I have had in the woods, and it wouldn't necessarily have to be a fatality.
If I saw this type of information, it would be like a flashing light, because there's more than one tree hung and continued to work. So that's a flashing red light.
This stump pull off of there is a flashing red light.
Continuing to work around two trees that are hung up is a flashing red light.
A skidder operator watching the individual limbing and topping in and around two trees that are hung up is a flashing red light.
All extremely serious. And, yes, it's a short period of time, but it indicates a pattern, and not a pleasant pattern. I think there's an accepted practice to do this very same thing all the time.

*35 Q. What is the red light about a stump pull off?
A. Well, that just shows the cutting techniquethe reason you get this is that it was an improper cutting technique.
The Plaintiffs also argued that evidence of Mr. Coleman's inadequate training and supervision was reflected in the fact that R.M. Logging had been unable to produce any records of what Mr. Coleman's training had consisted of, and that Mr. Robinson had testified only as to how he generally trained his employees without providing information specific to Mr. Coleman's training.
The circuit court granted summary judgment in favor of R.M. Logging based upon its conclusion that the Appellants had failed to establish a material question of fact as to all five of the elements of a deliberate intent cause of action, specifically, subsections (B) and (D) of W. Va.Code § 23-4-2(d)(2)(ii) (2003). In granting summary judgment, the trial court concluded that
the OSHA citation at issue is not evidence of subjective realization. While it is a citation related to training, it is not evidence of a subjective realization on the part of the employer that Mr. Coleman was not trained regarding work around suspended trees and walking under trees suspended in the air. Such a citation alone is not sufficient evidence of subjective realization on the part of the employer of the existence of a working condition that carries a high risk [of] injury or death.
... [T]he occurrence of the accident itself as circumstantial evidence is insufficient to demonstrate subjective realization. While it is true that circumstantial evidence may be used to prove the subjective realization requirement, there must be circumstantial evidence for a jury to consider beyond just the fact of the accident. For a court to find sufficient evidence of subjective realization, the employee/plaintiff must submit evidence beyond just the fact of the accident. The facts of the present case are more closely parallel to the facts of cases where there were no prior injuries or notice provided to the employer of the unsafe working conditions or where the worker himself created the condition.
... [I]n this case, the employee Mr. Coleman created a specific unsafe working condition by not following proper safety procedures, therefore, a deliberate intention action cannot be maintained against the employer R.M. Logging, Inc....
... [T]he record does not contain any evidence that R.M. Logging, Inc. was aware of the suspended tree, knew that Mr. Coleman would choose to continue to work around and under hung trees, or allowed or encouraged Mr. Coleman to engage in his dangerous and unsafe actions. The Court CONCLUDES that the plaintiffs failed to produce evidence sufficient to demonstrate that R.M. Logging, Inc. was aware of the specific unsafe condition.
... [T]hat the plaintiffs failed to produce evidence of the "subjective realization" required by W. Va.Code § 23-4-2(d)(2)(ii)(B) (2003) sufficient to survive the defendant's motion for summary judgment.
... [T]hat the record in this case is completely devoid of evidence of the existence of the requirements of [§ 23-4-2(d)(2)(ii)] (B) or (D), at the least. As stated above, there is no evidence that R.M. Logging, Inc. had the subjective realization that Mr. Coleman would choose, contrary to his training, to walk under trees suspended in the air, (the specific condition that led to the decedent's death), [(W. Va.Code § 23-4-2(d)(2)(ii)(B))], or that R.M. Logging, Inc., or its agent, forced, directed, or encouraged the decedent to walk under suspended trees, [(W. Va.Code § 23-4-2(d)(2)(ii)(D))]. The Court CONCLUDES that the evidence in the record is directly contrary to these two conditions. For example, (1) the decedent worked for two weeks with a certified logger, (2) the decedent was properly trained, and (3) the decedent was not directed to do as he didbut for the decedent's own negligence, the accident would not have occurred.
(Footnotes omitted).
Before this Court, the Plaintiffs argue that the circuit court erred in granting summary judgment where genuine issues of material fact remained in dispute as to R.M. Logging's *36 subjective realization of the unsafe working condition and intentional exposure of Mr. Coleman to that unsafe condition.[9]
R.M. Logging, on the other hand, argues that the Plaintiffs failed to present prima facie evidence of R.M. Logging's subjective realization. R.M. Logging submits that the subjective realization requirement is most often satisfied by evidence of prior complaints, prior injuries on the same equipment, or prior unabated citations by federal or state agencies, and no such evidence has been presented in this case. To the contrary, R.M. Logging contends that the opinion of the Plaintiffs' expert, Mr. Dougovito, is insufficient to prove that R.M. Logging had a subjective realization of an unsafe working condition based upon a theory of inadequate training or supervision. According to R.M. Logging, Mr. Dougovito's opinion would, at most, only tend to show that R.M. Logging should have known Mr. Coleman would walk under the tree.[10]
First, we note that R.M. Logging's argument, which was adopted by the circuit court, asserting there was no evidence to establish that R.M. Logging had a subjective realization that Mr. Coleman had hung two trees and that he would walk under a hung tree, or that R.M. Logging had intentionally exposed Mr. Coleman to the unsafe condition by requiring him to walk under hung trees, misapprehends the unsafe working condition at issue in this case. The plaintiffs in this action have alleged that the unsafe working conditions to which Mr. Coleman was intentionally exposed were a lack of training and supervision. Thus, to overcome summary judgment, the Plaintiffs were required to establish the existence of a material question of fact with regard to whether R.M. Logging had a subjective realization of the fact that Mr. Coleman was not properly trained and whether, knowing of his lack of training, R.M. Logging intentionally sent him out to cut trees.[11]
With regard to the subjective knowledge requirement, this Court has previously held that
a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.

Syl. pt. 3, in part, Blevins v. Beckley Magnetite, Inc., 185 W.Va. 633, 408 S.E.2d 385 (1991) (emphasis added). Furthermore, we have explained that "[t]he standard established by Blevins to satisfy [W. Va.Code § 23-4-2(d)(2)(ii)(B)] is `actual' knowledge. This is a high threshold that cannot be successfully met by speculation or conjecture." Mumaw v. U.S. Silica Co., 204 W.Va. 6, 12, 511 S.E.2d 117, 123 (1998) (per curiam). Nevertheless, we have also recognized that,
[t]o establish that an employer has acted with deliberate intention, no higher burden *37 of proof exists beyond those five requirements set forth in [W. Va.Code § 23-4-2(d)(2)(ii) (2003) (Spec.Supp. Aug. 2003)]. Under the statute, whether an employer has a "subjective realization and appreciation" of an unsafe working condition and its attendant risks, and whether the employer intentionally exposed an employee to the hazards created by the working condition, requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn. Accordingly, while a plaintiff may choose to introduce evidence of prior similar incidents or complaints to circumstantially establish that an employer has acted with deliberate intention, evidence of prior similar incidents or complaints is not mandated by [W. Va.Code § 23-4-2(d)(2)(ii) (2003) (Spec.Supp. Aug. 2003)].
Syl. pt. 2, Nutter v. Owens-Illinois, Inc., 209 W.Va. 608, 550 S.E.2d 398 (2001) (emphasis added).
Likewise, with respect to the intentional exposure requirement, we have recognized that "there ... must be some evidence that, with conscious awareness of the unsafe working condition ... an employee was directed to continue working in that same harmful environment." Tolley v. ACF Indus., Inc., 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002). The Tolley Court also observed that
[t]his Court has previously discussed what type of evidence is necessary to meet the fourth prong of the "deliberate intention" standard. In Mayles [v. Shoney's, Inc., 185 W.Va. 88, 405 S.E.2d 15 (1990)], we found sufficient evidence was introduced where "management at the restaurant knew how the employees were disposing of the grease, knew that a previous employee had been injured by such practice, had received employee complaints about the practice, and still took no action to remedy the situation." 185 W.Va. at 96, 405 S.E.2d at 23. Similarly, in Sias [v. W-P Coal Co., 185 W.Va. 569, 408 S.E.2d 321 (1991)], we held that the requisite intentional exposure prong had been met where the plaintiff produced evidence that his coal employer directed him to work in an unsafe mining area despite having actual knowledge of the probability and risk of a coal outburst in that particular section of the mine. 185 W.Va. at 575, 408 S.E.2d at 327-28.
Id., 212 W.Va. at 557-58, 575 S.E.2d at 167-68.
Viewing the evidence presented to the trial court in the light most favorable to the Plaintiffs, and with consideration of the standards for subjective knowledge and intentional exposure set forth above, we conclude that the evidence was controverted. Although the Plaintiffs' evidence is circumstantial rather than direct, we have recognized that states of mind must often be proved by circumstantial evidence. See Sias v. W-P Coal Co., 185 W.Va. 569, 575, 408 S.E.2d 321, 327 (1991) ("Subjective realization, like any state of mind, must be shown usually by circumstantial evidence, from which, ordinarily, conflicting inferences reasonably can be drawn."). Because genuine questions of material fact existed with respect to R.M. Logging's subjective knowledge of a specific unsafe working condition and intentional exposure of Mr. Coleman thereto, we find that the circuit court erred in granting summary judgement in favor of R.M. Logging on those issues.[12]

IV.

CONCLUSION
Based upon the foregoing analysis, we reverse the February 11, 2009, summary judgment order of the Circuit Court of Fayette County, and we remand this case for further proceedings consistent with this opinion.
Reversed and Remanded.
Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.
NOTES
[1] According to the deposition testimony of John Robinson, Jr., the foreman for R.M. Logging, R.M. Logging was wholly owned by his wife, Michelle Robinson. In January 2006, the company name was changed to JMS Contracting, Inc., and the company ceased its timbering operations.
[2] Also among the OSHA citations was one based upon the fact that "[e]ach danger tree, including lodged trees and snags, were [sic] not removed or avoided before work was commenced in the area," and one that was issued because "[h]and signals or audible contact were [sic] not used whenever noise, distance, restricted visibility, or other factors prevented clear understanding of normal voice communications between employees."
[3] "`[D]eliberate intention' [is a statutory] exception to the immunity from common law tort liability granted to employers under the West Virginia Workers' Compensation Act." Coleman Estate v. R.M. Logging, Inc., 222 W.Va. 357, 359, 664 S.E.2d 698, 700 (2008). The provisions of the Workers' Compensation Act that are relevant to this action, which are found in W. Va.Code § 23-4-2(d)(2)(ii) (2003) (Spec.Supp. Aug. 2003), are set out, infra, in Section III of this opinion.
[4] The complaint also named as defendants Clonch Industries, Inc., and Mr. John Robinson, individually. By order entered September 20, 2006, the circuit court granted summary judgment in favor of Clonch Industries. This order has not been appealed. Likewise, a February 10, 2009, order granting summary judgment in favor of Mr. Robinson has not been appealed. The only defendant to the instant appeal is R.M. Logging.
[5] Hereinafter referred to as "Coleman I."
[6] Although the 2003 version of W. Va.Code § 23-4-2(d)(2)(ii) is applicable to the Plaintiffs' claims, we recognize that this statute has been amended. As we commented in Coleman I,

[a]lthough the changes are not applicable to this action, it should be noted that, with regard to subsection (d)(2)(ii)(B), the phrase "[t]hat the employer had a subjective realization and appreciation of the existence of the specific unsafe working condition" was changed to "[t]hat the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition."
222 W.Va. 357, 361 n. 7, 664 S.E.2d 698, 702 n. 7. Pursuant to the 2003 version of W. Va.Code § 23-4-2(d)(2) that is applicable to the case sub judice,
[t]he immunity from suit provided under this section and under section six-a [§ 23-2-6a], article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:
(i) It is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or
(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
(B) That the employer had a subjective realization and an appreciation of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless thereafter exposed an employee to the specific unsafe working condition intentionally; and
(E) That the employee exposed suffered serious injury or death as a direct and proximate result of the specific unsafe working condition.
[7] Mr. Robinson states that he is a certified logger, and that he completed training provided by the State of West Virginia to obtain that certification.
[8] 29 CFR § 1910.266(i)(3)(iii) states:

(i) Training.
. . . .
(3) Content. At a minimum, training shall consist of the following elements:
. . . .
(iii) Recognition of safety and health hazards associated with the employee's specific work tasks, including the use of measures and work practices to prevent or control those hazards[.]
[9] In support of their argument, the Plaintiffs rely, in part, on this Court's prior decision in Ryan v. Clonch Industries, Inc., 219 W.Va. 664, 639 S.E.2d 756 (2006). The instant case is distinguishable from the Ryan case; therefore, Ryan is not applicable.
[10] R.M. Logging also challenges the strength of the opinions asserted by Mr. Dougovito, and quotes portions of his deposition wherein they contend he waivers on his conclusion that Mr. Coleman was not adequately trained. To the extent that R.M. Logging interprets this evidence as waivering on the part of Mr. Dougovito, this is a point they must argue to the finder of fact. Likewise, R.M. Logging's argument that Mr. Dougovito's opinion is flawed because of his reliance solely on the incident that resulted in Mr. Coleman's death is one to be made to the fact finder. Both of these arguments address the weight that a trier of fact should give to Mr. Dougovito's opinions.
[11] The hung tree and Mr. Coleman's decision to walk under said tree are simply manifestations of the allegedly inadequate training received by Mr. Coleman, and the Plaintiffs are not required to show a subjective realization of those manifestations on the part of R.M. Logging.
[12] The Plaintiffs also assign error to the circuit court's evidentiary ruling excluding nine of the eleven OSHA citations received by R.M. Logging following OSHA's investigation of Mr. Coleman's death. Insofar as we are remanding this case for further proceedings and this issue may be revisited by the circuit court during the actual trial of this matter, we decline to address the issue.