# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Richard DeBias and Renee DeBias, individually and as mother and next friend of Dominick DeBias, Plaintiffs Below, Petitioners**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 13-0929** (Randolph County 10-C-172)

**Coastal Lumber Company,
Defendant Below, Respondent**

### MEMORANDUM DECISION

Petitioners Richard DeBias and Renee DeBias, individually and as mother and next friend of Dominick DeBias, by counsel Wray V. Voegelin and Patrick S. Cassidy, appeal the July 30, 2013, order of the Circuit Court of Randolph County granting summary judgment in favor of respondent. Coastal Lumber Company, by counsel Denise D. Pentino and William E. Robinson, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Richard DeBias ("Mr. DeBias") obtained an Associate's Degree in Forestry in 1993 and began work for Coastal Lumber Company ("Coastal") in 1994. In 2007, he began working as a truck driver for Coastal. His responsibilities as a truck driver included driving a flatbed trailer to Coastal's Dailey Saw Mill to pick up green lumber and transport it to the nearby Dailey Yard.

On February 11, 2010, Mr. DeBias was instructed to pick up a load of green lumber and take it to the Dailey Yard. His load consisted of three stacks of lumber. After leaving the saw mill, a partial pack of lumber on the rear stack shifted approximately eighteen inches, but Mr. DeBias proceeded to the Dailey Yard without stopping to adjust the load. After arriving at the yard, Brian Fuston, a forklift operator, pushed the shifted stack back into place, and he and another forklift operator, Chris Scott, began off-loading the stacks of lumber in the front and middle of the trailer. As the forklift operators were unloading the stacks, Mr. DeBias was rolling up the load stabilizing straps used to hold the lumber on the trailer. He testified later that he was sure that he was rolling up the straps between the rear dual wheels. As Scott removed the middle

1

stack of lumber, the rear stack shifted and fell on Mr. DeBias. Prior to this accident, neither Fuston nor Scott had been cited or reprimanded for any unsafe acts relating to their employment.

Mr. DeBias suffered several injuries as a result of the falling lumber. These include an open pelvis fracture, a ruptured bladder, multiple rib fractures on both sides, and a T12-L1 vertebral fracture resulting in paraplegia. After lengthy hospital and rehabilitation admissions, Mr. DeBias returned home, but remains confined to a wheelchair and suffers from neurogenic bowel and bladder.

On October 1, 2010, petitioners filed the instant action, alleging violation of West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E), and loss of consortium on behalf of Mrs. DeBias and Dominick DeBias, Petitioner Richard DeBias's son. At issue were the training procedures of Coastal regarding forklift operation for off-loading lumber from tractor trailers. Coastal contends that it trained its employees through written and visual materials presented in a classroom setting, including the 29 C.F.R. §1910.178 Powered Industrial Truck Training Manual published by Safety Training and Consulting, Inc. Coastal also utilized videos in its training, including one entitled "Taylor Machine Works Safety Check Video," which was shot primarily in a lumber yard and depicts a wide variety of related yard activities and functions. One module of the video is devoted entirely to pedestrian related issues, including not operating the machinery when bystanders are present. Further, Coastal conducted weekly safety meetings with forklift operators, used operator's manuals in training, and used other written training materials as well as practical hands-on training.

After discovery, which included the depositions of many of Coastal's employees and experts from both sides, Coastal filed a motion for summary judgment, which petitioners opposed. Coastal argued that there was no genuine issue of material fact regarding the statutory requirements for deliberate intent, and argued specifically that petitioners could not prove the requisite elements set forth in West Virginia Code § 23-4-2(d)(2)(ii)(A) through (D). Petitioners argued that there was a genuine issue of material fact regarding how employees were trained in off-loading procedures. On March 11, 2013, the circuit court held oral arguments on the motion. On July 30, 2013, the circuit court entered an order granting summary judgment in favor of Coastal. The circuit court found that petitioners failed to show that Coastal had actual knowledge that the forklift operators were not properly trained; that there was no evidence of any improper forklift training which created a high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition; and, that Petitioner DeBias was intentionally exposed to the specific unsafe working condition.

Petitioners appeal the grant of Coastal's motion for summary judgment. Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). We

2

accord a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We note, as well, that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.],* 477 U.S. [242] at 252, 106 S.Ct. [2505] at 2512, 91 L.E.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995).

Petitioners first argue that the circuit court erred in finding that there was no genuine issue of material fact on the question of whether Coastal, prior to Mr. DeBias' injury, had actual knowledge of the specific unsafe working condition at issue in this case; and of the high degree of risk and strong probability of serious injury or death presented by the unsafe working condition such as to meet Part B of the five-part statutory test provided for at West Virginia Code § 23-4-2(d)(2)(ii)(B).[1] Petitioners argue that they presented evidence that Coastal, prior to Petitioner DeBias' injury, had actual knowledge of an unsafe working condition in that it knew that forklift operators had not been trained about an off-loading procedure requiring the forklift operators to wait until a truck driver had completed his work along the side of the trailer and moved to a safe place away from the trailer before the forklift operators were permitted to begin off-loading lumber from the trailer. Petitioners argue that this unsafe working condition and the lack of proper training presented a high degree of risk and the strong probability of serious injury or death.

West Virginia Code § 23-4-2(c) allows an injured worker to pursue a civil action for damages in excess of his Workers' Compensation benefits if the employer acted with "deliberate intention." Each of the elements set forth in West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E) must be proven. The relevant provisions read as follows:

> (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

---

[1] Petitioners argue in their petition that they met each of the five parts of the statutory test found in West Virginia Code § 23-4-2(d)(2)(ii)(A)-(E). However, they only specifically assign error to the circuit court's findings that they failed to meet parts (B) and (D); thus, this Court will only address parts (B) and (D).

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one [§ 23-4-1], article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

Petitioners allege that the unsafe working condition was Coastal's purported failure to properly train its forklift operators at the Dailey yard. In *Arnazzi v. Quad/Graphics, Inc.,* 218 W.Va. 36, 621 S.E.2d 705 (2005), this Court recognized that an employer's failure to provide mandatory forklift safety training can constitute a specific unsafe working condition within the meaning of the deliberate intent statute. However, in *Arnazzi*, the injured plaintiff was allowed to begin working without any forklift safety training whatsoever. *Id.* at 38, 621 S.E.2d at 707. This Court has found that

Given the statutory framework of W.Va. Code §§ 23-4-2(c)(2)(i) and (ii), (1983, 1991) which equates proof of the five requirements listed in W.Va. Code § 23-4-2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.

Syl. Pt. 3, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991). The "actual knowledge" requirement is recognized as "a high threshold that cannot be successfully met by speculation or conjecture." *Mumaw v. U.S. Silica Co.,* 204 W.Va. 6, 12, 511 S.E.2d 117, 123 (1998). Whether an employer has actual knowledge "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which

conflicting inferences may often reasonably be drawn." Syl. Pt. 2, in part, *Nutter v. Owens-Illinois, Inc.,* 209 W.Va. 608, 550 S.E.2d 398 (2001). This Court has observed:

> The plaintiffs in this action have alleged that the unsafe working conditions to which Mr. Coleman was intentionally exposed were a lack of training and supervision. Thus, to overcome summary judgment, the Plaintiffs were required to establish the existence of a material question of fact with regard to whether R.M. Logging had a subjective realization of the fact that Mr. Coleman was not properly trained and whether, knowing of his lack of training, R.M. Logging intentionally sent him out to cut trees.

*Coleman Estate ex rel. Coleman v. R.M. Logging, Inc.*, 226 W.Va. 199, 207, 700 S.E.2d 168, 176 (2010).

Petitioners cannot pass this high evidentiary threshold. The circuit court correctly concluded that they "cannot prove the existence of [a] genuine issue of material fact with regard to whether, prior to this injury, the Defendant, Coastal Lumber Company, had actual knowledge that the forklift operators were not properly trained." Moreover, the circuit court determined that it "cannot find any evidence proffered by either side through memoranda, oral argument, deposition testimony, or other evidence, even suggesting that the Defendant, Coastal Lumber Company, had actual knowledge of any improper training of forklift operators, that of which created a high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition." Additionally, the circuit court found that respondent had "provided all forklift operators at the Dailey Yard with formal, practical and observational forklift safety training as required by [OSHA]," which "included training in the particular content area of pedestrian safety." Respondent used a combination of written training materials, lectures, videos, manufacturer-published operator manuals, hands-on training, observational evaluations, weekly safety meetings, daily huddle sessions, and years of incident-free practical experience to train its forklift operators. Therefore, this Court finds no error in the circuit court's finding that petitioners did not meet their burden under West Virginia Code § 23-4-2(d)(2)(ii)(B) and thus summary judgment was proper.

Petitioners' second assignment of error is that the circuit court erroneously ruled that there does not exist a genuine issue of material fact on the question of whether Coastal exposed Mr. DeBias to the specific unsafe working condition at issue in this case intentionally such as to meet Part D of the five-part statutory test provided for at West Virginia Code § 23-4-2(d)(2)(ii)(D). Petitioners argue that prior to this injury, the supervisory staff was aware of the procedures used by forklift operators in off-loading lumber and aware of the training received by the operators. Petitioners further argue that Coastal created the training program for its forklift operators, which petitioners contend is evidence of Coastal's intentional exposure to an unsafe working condition.

To satisfy the "intentional exposure" requirement, there "must be some evidence that, with conscious awareness of the unsafe working condition . . ., an employee was directed to continue working in that same harmful environment." *Tolley v. ACF Industries, Inc.,* 212 W.Va.

548, 558, 575 S.E.2d 158, 168 (2002). Like actual knowledge, deliberate intent "requires an interpretation of the employer's state of mind." Syl. Pt. 2, in part, *Nutter,* 209 W.Va. 608, 550 S.E.2d 398 The circuit court correctly concluded that it "cannot find that the Plaintiff can demonstrate that there is a genuine issue of material fact that the Defendant . . . intentionally exposed the Plaintiff to the specific unsafe working condition."

In this case, petitioners must establish both that Coastal had actual knowledge that its forklift operators at the Dailey Yard were not properly trained and that, knowing of their lack of training, it intentionally sent the operators out to perform their duties. The evidence shows that the forklift operators were properly trained in compliance with Occupational Safety and Health Administration requirements and that the training was utilized in practice. There was no evidence of prior injury due to the lumber off-loading practices or that there were complaints without Coastal taking action on the same. Moreover, Coastal did not direct Mr. DeBias to work in that area with actual knowledge of the probability lumber would fall on him. The circuit court properly found that there was no evidence that Coastal had actual knowledge that its forklift operators were not properly trained and, knowing of their lack of training, intentionally exposed petitioner to an unsafe working condition. We find no error in the circuit court's findings and the grant of summary judgment in favor of Coastal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis

6